---

### Circuit Court Case No. 13-55563

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Joseph O'Bryne**
PLAINTIFF – APPELLANT,

v.

**Portfolio Recovery Associates, LLC;**
DEFENDANT– APPELLEE.

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT CASE NUMBER:
3:12-CV-00447-IEG-NLS

---

APPELLANT'S REPLY BRIEF

---

*Attorneys for Appellant-Plaintiff:*

Robert L. Hyde (CSBN 227183)
bob@westcoastlitigation.com
Joshua B. Swigart (CSBN 225557)
josh@westcoastlitigation.com
**HYDE & SWIGART**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3609
Telephone:   (619) 233-7770

Clinton Rooney (CSBN 21628)
rooneycdi@gmail.com
225 Broadway, Suite 1900
San Diego CA 92101
Telephone:   (619) 573-9547

Stephen G. Recordon (CSBN 91401)
sgrecordon@aol.com
**Recordon & Recordon**
225 Broadway, Suite 1900
San Diego, CA 92101
Telephone:   (619) 232-1717

---

## TABLE OF CONTENTS

Table of Contents..................................................................................i-ii

Table of Authorities ..........................................................................iii-v

    Table of Authorities - Cases ..........................................................iii-v

    Table of Authorities - Federal Statutes ..............................................v

    Table of Authorities - Federal Rules of Appellate Procedure..........................v

    Table of Authorities - Ninth Circuit Rules ..........................................v

I.    Rebuttal regarding the account stated issue. ........................................1

    A.    PRA's misrepresentations were material...............................................1

        1.  Contrary to PRA's claim, O'Bryne did discuss materiality................1

        2.  The FDCPA does not provide lawyers with special protection.........2

    B.    PRA's loss in state court, while not dispositive, is relevant..................5

    C.    The alternate interpretation of the state complaint that PRA offers merely establishes another violation. ....................................................7

    D.    The court erred when it held that an account stated does not require the intent of the parties...................................................................9

        1.  An account stated action is based primarily on intent. ....................9

        2.  Common sense also provides for intent. .........................................11

        3.  No one here formed, or intended to form, an account stated. .........11

II.    Rebuttal regarding the contractual fees and interest issues...........................14

    A.    PRA pleaded compound interest as unjust enrichment, which violates 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692f(1). ................................14

        1.  The court erred when it held that contractual late fees and compound interest could be pleaded as restitution. .......................16

        2.  PRA is misstating the district court's ruling...................................16

            a.  Contrary to the claims of PRA, no other California authority is in accord with *Kawasho*...........................................................17

       (1)   *Salter v. Marsh* does not support *Kawasho*............................17

       (2)   *In re Estate of Hubbell* does not support *Kawasho*. ..........18-19

       (3)   *Zumbrun v. University of Southern California* does not support *Kawasho*...................................................................................19

       (4)   *Philpott v. City of Los Angeles* does not support *Kawasho*.....20

   C.     Just as with account stated, here PRA's violations were material........20

II.    Conclusion.....................................................................................................21

    Statement of Related Cases............................................................................(a)

    Certificate of Compliance Pursuant To Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1 .......................................................................................(a)

    Certificate of Service ...............................................................Separate Cover

    Excerpts of Record Volume #1 (E.R. 1-287) .............................Separate Cover

    Excerpts of Record Volume #2 (E.R. 288-547) .........................Separate Cover

## TABLE OF AUTHORITIES - CASES

*American Fruit Growers, Inc. v. Jackson*
203 Cal. 748 (Cal. 1928) ...................................................................10

*Beltaire v. George Rosenberg & Son*
129 Cal. 164 (Cal. 1900) ...................................................................10

*Brown v. Card Serv. Ctr.*
464 F.3d 450 (3d Cir. 2006) ..........................................................8, 15

*Clark v. Capital Credit & Collection Servs.*
460 F.3d 1162 (9th Cir 2006) ...........................................................3, 5

*Coffee v. Williams*
103 Cal. 550 (Cal. 1894)............................................................9, 11-13

*Davis & Cox v. Summa Corp.*
751 F.2d 1507 (9th Cir. Cal. 1985)....................................................10

*Donohue v. Quick Collect, Inc.*
592 F.3d 1027 (9th Cir. 2010).........................................................5-6

*Fogarty v. McGuire*
170 Cal. App. 2d 405 (Cal. App. 2d Dist. 1959) ..............................11

*Fox v. Citicorp Credit Servs.*
15 F.3d 1512 (9th Cir. Ariz. 1994) .....................................................3

*Gardner v Watson*
170 Cal 570 (1915) ...........................................................................10

*Gonzales v. Arrow Fin. Servs., LLC,*
660 F.3d 1055 (9th Cir. Cal. 2011)...........................................5, 8, 15

*Harvey v. Great Seneca Fin. Corp.*
453 F.3d 324 (6th Cir. 2006) ..............................................................6

*Heintz v. Jenkins*
514 U.S. 291 (1995)..............................................................................6

*In re Estate of Hubbell*
    216 Cal. 574 (Cal. 1932) ............................................................................18-19

*Kawasho Int'l, U.S.A., Inc. v. Lakewood Pipe Service, Inc.*
    152 Cal App 3d 785 (1983) .......................................................................16-20

*Kinkle v. Fruit Growers Supply Co.*
    63 Cal. App. 2d 102 (Cal. App. 1944)..............................................................9

*Maggio, Inc. v. Neal*
    196 Cal. App. 3d 745 (Cal. App. 4th Dist. 1987)...............................................5

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*
    637 F.3d 939 (9th Cir. 2011).............................................................3-4, 6-7, 13

*Mercantile Trust Co. v. Doe*
    26 Cal. App. 246 (Cal. App. 1914).................................................................10

*Perry v. Schwartz*
    219 Cal. App. 2d 825 (Cal.App. 2d Dist. 1963)..................................................9

*Philpott v. City of Los Angeles*
    1 Cal 2d 512 (1934) ................................................................................17, 19-20

*Rosenau v. Unifund Corp.*
    539 F.3d 218 (3d Cir. 2008) .............................................................................8

*Rotea v. Izuel*
    14 Cal.2d 605 (1939)........................................................................................16

*Salter v. Marsh*
    94 Cal. App. 124 (Cal. App. 1928) ..............................................................17-18

*S.O.S., Inc. v. Payday, Inc.*
    886 F.2d 1081 (9th Cir. Cal. 1989).................................................................10

*State of California v. Day*
    6 Cal.App.2d 536 (1946)..............................................................................16, 19

*Tourgeman v. Collins Fin. Servs.*
2014 U.S. App. LEXIS 11940, 20 (9th Cir. Cal. June 25, 2014) ....................3, 5

*Trafton v. Youngblood*
69 Cal. 2d 17 (Cal. 1968) ..................................................................................11

*United States v. Archdale*
229 F.3d 861 (9th Cir. 2000) .............................................................................13

*Zinn v. Fred R. Bright Co.*
271 Cal. App. 2d 597 (Cal. App. 4th Dist. 1969)..............................................13

*Zumbrun v. University of Southern California*
25 Cal. App. 3d 1 (Cal. App. 2d Dist. 1972)....................................................19

## TABLE OF AUTHORITIES - FEDERAL STATUTES

15 U.S.C. § 1692e(2) ........................................................................6,7, 21

15 U.S.C. § 1692e(10) ............................................................................8

15 U.S.C. § 1692f(1) ............................................................................21

## TABLE OF AUTHORITIES - FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 32(a) ..........................................................................(a)

## TABLE OF AUTHORITIES - NINTH CIRCUIT RULES

Ninth Circuit Rule 32-1 ......................................................................(a)

I.   **Rebuttal regarding the account stated issue.**

    A.  **PRA's misrepresentations were material.**

      The central argument from PRA is that O'Bryne is merely "quibbling" with the words used by PRA in its state action. PRA also argues that O'Bryne is not a lawyer, and as a layperson he is not protected from PRA's misrepresentations as he cannot appreciate their legal effect.

      However, the misrepresentations made by PRA were far from immaterial. They are factual misrepresentations designed to deny O'Bryne his contractual remedies by circumventing the contract previously reached between O'Bryne and non-party Capital One. [E.R. 149 - 154]. Through these misrepresentations, PRA eliminates the danger that O'Bryne might invoke arbitration under the contract [E.R. 154], and ensures that should O'Bryne prevail in state court, as he did here, O'Bryne might be awarded his contractual attorneys' fees. [E.R. 153]. This also denied O'Bryne the right to use Virginia law, as provided by the contract. [Id.]

      1.  **Contrary to PRA's claim, O'Bryne did discuss materiality.**

      O'Bryne discusses materiality at length in his opening brief. "The sole purpose of misstating the character and legal status of the Capital One debt was to deprive O'Bryne of the benefits his contract with Capital One provided - arbitration, attorneys' fees, etc." *Opening Brief at 13.* "[PRA's misrepresentations were] designed to deny O'Bryne his contractual rights and remedies." *Id., at p. 19.* PRA's falsifications were pleaded so that "PRA need not produce the evidence needed in a breach of contract case, or fear that the consumer will demand arbitration under the contract." *Id., at p. 5.* Finally, O'Bryne argued that "[t]he sole purpose of misstating the character and legal status of the Capital One debt was to deprive O'Bryne of the benefits his contract with Capital One provided - arbitration [*E.R. 154*], attorneys' fees [*E.R. 153*], etc." *Id., at p. 13.*

---

## 2.   The FDCPA does not provide lawyers with special protection.

PRA makes a novel argument, arguing that because the least sophisticated debtor is not trained in the law such a debtor is not protected from deceptive legal representations, as a debtor would not recognize such legal deceptions and misrepresentations, and consequently, such deceptions are immaterial:

> O'Bryne cannot demonstrate materiality here. … His theory … presupposes that the least sophisticated debtor is trained in the law and is familiar with the elements of various legal claims a debt collector might assert, and would therefore be misled or confused if a legal claim was not described correctly. But that is not the case; if it were, there would be no need for the least sophisticated debtor standard.

*Answering Brief, at pp. 15-16.*

> The least sophisticated debtor is not a trained attorney. He is not familiar with the proper way to plead a common count claim, or the elements of an unjust enrichment request. The least sophisticated debtor would not be able to read the complaint and discern whether all of the elements of the claim had been pled, or whether there was a valid legal basis for PRA to assert the claim. Only a small fraction of debtors, who have legal training, would have the capacity to be misled in the way O'Bryne alleges. But the hypothetical least sophisticated debtor will not be confused or misled at all.

*Answering Brief, at pp. 18-19.*

The idea that "only a small fraction of debtors," those with "legal training," are capable of understanding the law is both dubious and irrelevant.

> … Congress intended to achieve its goal of regulating debt collectors' conduct by motivating consumers to bring enforcement actions if they are the targets of unlawful collection efforts. And the Act's broad regulatory purpose is effectuated by measuring the lawfulness of a debt collector's conduct not by its impact on the particular consumer who happens to bring a lawsuit, but rather on its likely effect on the

> most vulnerable consumers — the hypothetical "least sophisticated debtor" — in the marketplace.

*Tourgeman v. Collins Fin. Servs.*, 2014 U.S. App. LEXIS 11940, 20 (9th Cir. Cal. June 25, 2014); *Id*., fn 9, ("Debt collectors must not make representations that tend to lead consumers to forego the valuable rights granted to them by the Act.") "[T]he statutory text itself is aimed squarely at the debt collector's conduct, rather than at its effect on the consumer." *Id,* at 16. Whether a consumer does not receive the communication, or does not read it, or the fact that the consumer is savvy enough not to be misled by it, is irrelevant. *Id.* at 18.

However, for eight pages, PRA still urges that only those with legal training should be protected from the misrepresentations of PRA. *Answering Brief at 15-22*. PRA quite literally asks this court to hold that it can use false, deceptive, or misleading representations while collecting debts, just as long as it does so in a complicated, legalistic way.

However, the FDCPA does not protect only attorneys. It "protects all consumers, the gullible as well as the shrewd … the ignorant, the unthinking, and the credulous." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. Or. 2006). Further, this court has already rejected any argument that those with legal training are afforded special consideration under the FDCPA. *Fox v. Citicorp Credit Servs.*, 15 F.3d 1512, 1512 (9th Cir. Ariz. 1994) ("The plain language of the statute unambiguously precludes any continued doctrine of special treatment for attorneys under the FDCPA.")

This Court also addressed this issue in *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. Mont. 2011), where another collector, JRL, used deceptive legal representations in its Requests for Admissions in state court discovery. In *McCollough*, not only did this court decline to adopt the lessor standard for laypersons that PRA urges here, the court found the actions of JRL to

be in violation of the FDCPA as a matter of law as the requests contained false information upon a *pro se* defendant without an explanation that the requests would be deemed admitted after thirty days.

> The requests for admission did not include an explanation that, under Montana Rule of Civil Procedure 36(a), the requests would be deemed admitted if McCollough did not respond within thirty days. Because we consider the debt collector's conduct from the standpoint of the least sophisticated debtor, we must conclude that the service of requests for admission containing false information upon a pro se defendant without an explanation that the requests would be deemed admitted after thirty days constitutes "unfair or unconscionable" or "false, deceptive, or misleading" means to collect a debt.

*Id.*, at 952.    So while PRA asks the court to hold that misleading legal communications to consumers are immaterial, the Ninth Circuit has held just the opposite - such conduct "constitutes 'unfair or unconscionable' or 'false, deceptive, or misleading' means to collect a debt. *Id.*

PRA also argues that falsifying an account stated does not deny O'Bryne the right to arbitration as O'Bryne could have moved to compel arbitration. *Answering Brief at fn 16*.    This idea that the consumer must take action to correct debt collector misrepresentations was echoed by PRA's counsel, Tomio Narita, in oral argument before the district court:

> …the bottom line is that if a consumer wants to respond to the complaint and says, hey, I know this, this is on my credit card, every credit card has an agreement and I think the agreement is better for me, they can do that. They can do that by themselves, *pro se*. They can do it with the help of an attorney.   There's nothing that prevents them from doing that.

[E.R. 508-509].

As Mr. Narita correctly points out, "every credit card has an agreement," so when PRA claims otherwise in a state action, this claim violates the FDCPA.   A

consumer is under no duty to correct misrepresentations made by the debt collector. Instead the debt collector is under a duty to refrain from making these misrepresentations in the first place. As the *Tourgeman* court found, a deception occurs even when the debtor does not know the deception took place. The consumer need only be the *target* of illegal debt collection. *Id.*, at 15; *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. Cal. 2011), (when "faced with ambiguous language," "consumers are under no obligation to seek explanation of confusing or misleading language…." *Id.*, at 1062-1063.)

Here PRA was falsifying facts needed to support an account stated action in its effort to deny O'Bryne arbitration and attorneys' fees, under the Capital One contract - both are material issues. The falsification of these facts "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Tourgeman*, at 29. "By ensuring that consumers are fully and truthfully apprised of the facts and of their rights, the FDCPA enables them 'to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process.' *Clark*, 460 F.3d at 1171; see also [*Donohue v. Quick Collect, Inc*. 592 F.3d 1027, 1033 (9th Cir. 2010)]." *Tourgeman*, at 32-33.

**B. PRA's loss in state court, while not dispositive, is relevant.**

The burden of establishing an account stated in the state action was on PRA. *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 753 (Cal. App. 4th Dist. 1987) (the burden of establishing an account stated falls on the shoulders of the plaintiff.) PRA could not establish an account stated, and lost after trial.

PRA argues that "[a]lthough this Court held in *Donohue* that a state court complaint served directly on a debtor is a 'communication' subject to the FDCPA, this Court did not hold that a collector violates the FDCPA if its counsel selects the wrong legal claims to pursue, or if the legal claims selected by the collector's

counsel do not prevail at trial." *Answering Brief at 9*. But the issue here is not that the PRA selected the "wrong legal claims to pursue." The issue here is that PRA misstated the *facts* and the "character [and] legal status" of the debt, in violation of 15 U.S.C. § 1692e(2). And O'Bryne agrees that *Donohue* did not hold that such conduct violates the FDCPA – *McCollough* did that.

O'Bryne does not urge that when a collector loses an action in state court this is a *per se* violation. *Heintz v. Jenkins*, 514 U.S. 291, 296 (U.S. 1995)("…we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, *by itself*, make the bringing of it an 'action that cannot legally be taken.'") (Italics added.) However, here the loss was not "by itself." Here the evidence is overwhelming that PRA attempted to deceive O'Bryne with misrepresentations about an account stated that was never formed, and it was only because O'Bryne did not default that it was discovered PRA was unable to prove its case.

In *McCollough*, a debt collector, JRL, looked to *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006) and argued that "requesting attorney's fees without having proof of its entitlement to those fees at the time it filed the complaint" is not a violation of the FDCPA. However, *McCollough* distinguished *Harvey* and held that "in contrast to *Harvey*, JRL's collection action in this case was invalid because JRL presented no admissible evidence establishing its entitlement to collect the fees at the time of the summary judgment motion — not at the time it filed suit." *Id.*, at 950.

Even the *Harvey* court agreed with this reasoning, stating, "*the filing* of a debt-collection lawsuit without the *immediate means* of proving the debt" does not violate the FDCPA. (Italics added.) Here, however, PRA forced O'Bryne to go all the way through trial, and ultimately "presented no admissible evidence establishing its entitlement to [an account stated]."

## C.  The alternate interpretation of the state complaint that PRA offers merely establishes another violation.

When Congress drafted the FDCPA, it expressly provided that when a debt collector falsely represents "the character, amount, or legal status of any debt," this conduct violates 15 U.S.C. § 1692e(2).  This includes representations as to character, amount, or legal status in state court lawsuits.  *McCollough*, 637 F.3d at 949 (applying 15 U.S.C. § 1692e(2) to state court lawsuits.)

PRA argues that one interpretation of its state complaint is that an account stated was formed, not between O'Bryne and PRA, but between O'Bryne and Capital One.  This is an attenuated reading of the complaint, but even if it were accepted this merely demonstrates that PRA's complaint was confusing and was open to two potential interpretations, both of which were deceptive as O'Bryne and Capital One acknowledge there was never an account stated between them.

Here, PRA chose to use an *optional* Judicial Council Form, PLD-C-001 [E.R. 060].  PRA argues that what it meant in the complaint depends on how it is interpreted.  However, the complaint plainly states that the plaintiff was "Portfolio Recovery Associates, LLC" [E.R. 058] and the defendant was O'Bryne [Id.], and that an account stated had been formed "because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff." [E.R. 060].

However, PRA argues that O'Bryne should have concatenated clauses in the complaint, in different sections, *made two pages apart*, on pages E.R. 058 and E.R. 060, and deduced that what PRA really meant was that an account stated was formed between Capital One and O'Bryne, even though that is not what PRA said.  *Answering Brief at 24-25, § 1*.  This is attenuated, unreasonable, and not even true.

First, the obvious. Capital One was not the "plaintiff" here, and contrary to the argument by PRA, calling Capital One a "predecessor" of the debt does not make Capital One a "plaintiff." *Answering Brief at 25.* When PRA stated that O'Bryne owed the money "because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff," PRA was stating that this supposed account stated was formed between PRA and O'Bryne, the plaintiff and defendant, respectively. It would not have been hard for PRA to be truthful here - they choose not to be truthful because by claiming an account stated, they denied O'Bryne his contractual remedies.

Further, PRA's idea that PRA really meant Capital One was the plaintiff, ignores the fact that Capital One denies forming an account stated. In deposition, Capital One admitted that it never waived its contract, a requirement for an account stated. [E.R. 124:17-22] O'Bryne said the same thing in his sworn declaration. [E.R. 77:23-25]. But still PRA argues that its statement in its complaint could be read to have two different meanings, but it could not.

However, even accepting PRA's argument, when a communication can be reasonably read to have two or more different meanings, one of which is inaccurate, this violates the FDCPA, and here *both* were inaccurate.

> Section 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect … any debt," has been referred to as a "catchall" provision, and can be violated in any number of novel ways. [*Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008)]. Nevertheless, it is well established that "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006).

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. Cal. 2011).

**D. The court erred when it held that an account stated does not require the intent of the parties.**

PRA also argues that an account stated - a contract that abandons the previous contract - may be formed without the knowledge or intent of the parties that are bound by that abandoned contract. ("Notably missing from O'Bryne's brief, however, is any authority for the proposition that the intent of the sender is an element of an account stated. It is not.") *Answering Brief at 30*. The reason PRA makes such an argument is obvious. PRA fabricated this claim of an "account stated" out of whole cloth, without the knowledge or intent of either O'Bryne or Capital One (much less *both* parties), so PRA must now argue that neither party needs to have the knowledge or intent to form an account stated. But such an assertion is contrary to case law and contrary to common sense.

**1. An account stated action is based primarily on intent.**

"An account stated is based primarily on the question of whether both parties intend the transaction to become a full and final settlement of the entire indebtedness represented thereby." *Kinkle v. Fruit Growers Supply Co.*, 63 Cal. App. 2d 102, 114 (Cal. App. 1944).

"An account stated is an agreed balance of accounts, the effect of which is to establish prima facie the accuracy of the items without other proof, and to constitute a new contract on which an action will lie." *Coffee v. Williams*, 103 Cal. 550, 553 (Cal. 1894).

> An account stated, by its very nature, normally assumes the consideration of all objections, is usually a compromise, and is a final, conclusive acknowledgment of an exact amount due having in contemplation all credits and offsets. An account stated is an agreed balance of accounts; an account which has been examined and accepted by the parties.

*Perry v. Schwartz*, 219 Cal. App. 2d 825, 829 (Cal.App. 2d Dist. 1963).

"The action upon an account stated is not upon the original dealings and transactions of the parties. ... It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement." *Gardner v Watson* 170 Cal 570, 574 (1915). "An account stated requires that there be an agreement, expressed or implied, that the balance is correct and this agreement constitutes a new contract which takes the place of the original contract whether open or closed." *Mercantile Trust Co. v. Doe*, 26 Cal. App. 246, 252 (Cal. App. 1914). "Under California law, an account stated is a new contract, and an action on it is not based on the original contract, but on the balance confirmed by the parties." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. Cal. 1989).

The *express admission* from the consumer that a certain sum was due from him at the time a balance was struck and agreed upon is required:

> To constitute an account stated it must appear that at the time of the accounting certain claims existed, for and concerning which an account was stated; that a balance was then struck and agreed upon, and that defendant expressly admitted that a certain sum was then due from him as a debt.

*Beltaire v. George Rosenberg & Son*, 129 Cal. 164, 167 (Cal. 1900).

Both parties must assent - the creditor, ("[I]t is clear that a statement rendered cannot be said to be an account stated unless it was intended to be such....") *American Fruit Growers, Inc. v. Jackson*, 203 Cal. 748, 751-752 (Cal. 1928), and - the debtor, *Beltaire v. George Rosenberg & Son*, 129 Cal. 164, 167 (Cal. 1900) (The debtor must expressly consent to an account stated.); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507 (9th Cir. Cal. 1985), (plaintiff has the burden of showing that the transaction was fair, regular, and entered into voluntarily by defendant "with full knowledge of the facts.") *Id.*, at 1515.

### 2. Common sense also provides for intent.

If, as PRA urges, the court were to hold that the intent of the sender is not required to form an account stated, the consequences would stagger the credit and banking industry. It would mean that when a creditor sends a debtor a billing statement, an account stated is inadvertently formed between the parties, and consequently the previous contract between the the parties is inadvertently rescinded. Home mortgage liens would thereafter be inadvertently rescinded by the creditor sending the homeowner a billing statement. Automobile manufacturers could no longer repossess motor vehicles as the underlying contract that allows for a security interest would be rescinded when consumer was sent a billing statement. This is the argument from PRA - that O'Bryne was sent a billing statement by Capital One, and that billing statement created an account stated.

In *Coffee v. Williams*, 103 Cal. 550 (Cal. 1894), California's Supreme Court anticipated such effects when it made clear that merely sending a billing statement *does not* create an account stated. ("[T]he account, in order to constitute a contract, should appear to be some thing more than a mere memorandum; it should show upon its face that it was intended to be a final settlement up to date. And this should be expressed with clearness and certainty.") *Id*. at 556; *Fogarty v. McGuire*, 170 Cal. App. 2d 405, 409 (Cal. App. 2d Dist. 1959) (same). The "writing" that PRA looked to here *was* a mere memorandum. [E.R. 315-316].

### 3. No one here formed, or intended to form, an account stated.

Here it is undisputed that no one intended to form an account stated, much less all of the parties. O'Bryne stated in a declaration that he never formed an account stated. [E.R. 77:23-25]; Capital One also stated it did not form an account stated. [E.R. 124:17-22]; and PRA could not have done so even if it desired, as PRA was not the creditor. *Trafton v. Youngblood*, 69 Cal. 2d 17, 26 (Cal. 1968) (Only the creditor and the debtor can form an account stated.)

Further, the credit card statement that PRA relied on for its claim of account stated did not "show upon its face that it was intended to be a final settlement up to date," as required. *Coffee v. Williams*, 103 Cal. 550, 556 (Cal. 1894). The statement was only what every consumer and credit card company knows such a document is meant to be - it was a monthly bill.

For its claim to an account stated, PRA relied on a credit card statement sent by Capital One to O'Bryne - one of many. "O'Bryne testified that he opened the Capital One account and was the sole authorized user. He does not deny that he received the final statement sent by Capitol One, and admits he made no attempt to dispute the statement. These facts, standing alone, are sufficient to establish an account stated between the parties as reflected by the final mailed statement." [E.R. 351]. This billing statement is at E.R. 315-316.

Besides the obvious fact that neither Capital One nor O'Bryne ever intended that this billing statement form an account stated [E.R. 77:23-25 and E.R. 124:17-22], a mere memorandum of account cannot be used to form an account stated. *Coffee v. Williams*, 103 Cal. 550, 556 (Cal. 1894).

Further, any writing relied on to form an account stated must have "an element of finality" to it. *Am. Fruit Growers, Inc. v. Jackson*, 203 Cal. 748, 751 (1928). Just as in *Am. Fruit Growers*, the billing statement here demonstrates that O'Bryne and Capital One were still transacting business - the billing statement is devoid of any finality. [E.R. 414-415]. This billing statement talks of future credit lines; minimum payments; future billing dates; ways O'Bryne could avoid past due fees in the future; the opportunity for O'Bryne to make "new purchases" in the future; talk of how Capital One was going to protect O'Bryne's "new purchases"; how O'Bryne could close his account with Capital One if he chose to do so, and stating what Capital One could do if O'Bryne chose to close his account; as well as a discussion of other future charges. [E.R. 414-415].

"[An] account, in order to constitute a contract, should appear to be some thing more than a mere memorandum; it should show upon its face that it was intended to be a final settlement up to date. And this should be expressed with clearness and certainty." *Coffee v. Williams*, 103 Cal. 550, 556 (Cal. 1894).

PRA argues that the court should ignore the Supreme Court in *Coffee*, and instead look to an appellate decision, *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597 (Cal. App. 4th Dist. 1969). *Zinn* is often cited by debt buyers for the flawed proposition that an account stated is automatically formed when a creditor merely sends a credit card statement to a debtor. However, that is a distortion of *Zinn*.

*Zinn* states that an account stated requires "an agreement between the parties," but still PRA insists the intent of the sender is not an element of an account stated. PRA wants this court to hold that an account stated can be formed, with all previous contracts waived, through a mere, unintentional, accident.

Capital One stated in a deposition that Capital One never waived its contract. E.R. 124:17-22 (where Capital One states that when the last statement was sent O'Bryne, the March 2005 contract was still in effect - there was no account stated.[1]) O'Bryne says the same. [E.R. 77:23-25]. Consequently, there could not be an account stated here.

_____

[1] PRA now objects to this statement, but Capital One was never asked a question that was objectionable, nor did Capital One ever make an objection. E.R. 124:17-22. Further, PRA failed to preserve any objection for appeal as PRA failed to object at the time of O'Bryne's motion for summary judgment. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 954 (9th Cir. Mont. 2011), quoting *United States v. Archdale*, 229 F.3d 861, 864 (9th Cir. 2000) (holding that filing a motion in limine is insufficient to preserve an issue for appeal absent a further objection at trial.) Finally, PRA has no standing to make such an objection as any objection would be the purview of Capital One, and not PRA.

**II.    Rebuttal regarding the contractual fees and interest issues.**

**A. PRA pleaded compound interest as unjust enrichment, which violates 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692f(1).**

PRA argues that in its state complaint it only alleged a right to recover the amount by which O'Bryne had been unjustly enriched. ("PRA…was only requesting the return of 'the sum by which [O'Bryne] has been unjustly enriched' and nothing further.") *Answering Brief, at p. 36.*   In reality, PRA also requested compound interest as part of that balance - the $3,421.74 demand included compound interest.  [E.R. 315 and 414.]  During oral argument in the district court, PRA's counsel admitted this to be the case:

> The Court:  So even though, your position is that even though the 3421 includes interest and fees, that it can be recoverable under unjust enrichment because, I guess, that's all added to the principal?
>
> Mr. Narita:  Because it becomes part of the debt, essentially.   It becomes part of the debt pursuant to the terms, the express terms of the contract and as reflected each month in the account that was kept relating to this account.

E.R. 504, lns 8-15.

In ¶ CC-1 of the state complaint [E.R. 025], PRA lays out its theories - open book account; account stated; goods, wares and merchandise; money lent; and unjust enrichment. In ¶ CC-2, PRA then demands damages of $3,421.74, which, as PRA's counsel admitted to the court (above), "includes interest and fees" added to the principal [E.R. 504, lns 8-15].  See also, E.R. 414 - 415.

This amount is listed again in ¶ CC-1(b)(3) [E.R. 025].   There is no other amount listed elsewhere, and even today, PRA has never identified what other amount they supposedly intended as unjust enrichment if not the $3,421.74.

Further, near the top of the Judicial Council Form appears the language, "(Use a separate cause of action form for each cause of action.)" [E.R. 025]. Had PRA wanted to claim a different amount of damages for each claim, they were supposed to use more than one form, or simply used pleading paper. Instead, PRA chose to list all its claims on a single form, and claim a single amount of damages.

PRA now ignores all of this, instead quoting only the sub-paragraph containing the phrase "unjust enrichment" at ¶ CC-1b(6). There, PRA claims a right under unjust enrichment to recover the "value thereof" of the amount that O'Bryne had allegedly been unjustly enriched. [E.R. 025]. PRA fails to inform the Court that in the paragraph directly following this text, ¶ CC-2, PRA claimed that the "reasonable value" of its claims is the $3,421.74.

PRA merely claimed a right to recover $3,421.74 on all of PRA's claims, regardless of the theory pleaded. It is only now that PRA has decided to argue that they meant to ask for some other, as of yet unidentified, amount. PRA claimed a right to recover $3,421.74 as unjust enrichment, and now hopes to reverse course.

Finally even if PRA had somehow intended to claim a right to an amount less than $3,471.21 under a theory of unjust enrichment, PRA still violated the FDCPA as its complaint can be reasonably read to have two meanings.

> Nevertheless, it is well established that "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006).

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. Cal. 2011).

**1. The court erred when it held that contractual late fees and compound interest could be pleaded as restitution.**

The district court correctly found that PRA's claims for unjust enrichment; money lent; and goods, wares and merchandise, were claims for restitution. [E.R. 485, lns 15-16]. However, the district court then committed clear error by holding that restitution could include damages for compound interest. [E.R. 486, lns 3-4]. Restitution is the return of the benefit received, and it does not include damages beyond this, such as fees and compound interest, which are only available as expectation damages with an express or implied in fact contract. ("The measure of the liability is the amount received.") *Rotea v. Izuel*, 14 Cal.2d 605, 611 (1939); *State of California v. Day,* 76 Cal.App.2d 536, 554 (1946) (Without an express written agreement to the contrary, "[t]he compounding of interest has not been approved, legislatively or judicially, in this state.")

By ruling that PRA could request $3,421.74 as restitution, when that amount included contractual late fees and compound interest, the district court implicitly ruled that such amounts were also recoverable as restitution. This is clear error. Essentially the district court said that expectation damages, in the form of express contractual compound interest and late fees, were recoverable as restitution.

**2. PRA is misstating the district court's ruling.**

PRA now attempts to distance itself from the district court's ruling by proposing that the district court ruled something else entirely - that PRA's claims for assumpsit were not claims for restitution, but for some other unnamed measure of damages, and that the court allowed this new unnamed measure of damages for assumpsit under *Kawasho Int'l, U.S.A., Inc. v. Lakewood Pipe Service, Inc*., 152 Cal App 3d 785 (1983). However, these damages already have a name - "expectation damages." If PRA believes that it could recover contractual late fees and compound interest as unjust enrichment, it has not explained how.

### a. Contrary to the claims of PRA, no other California authority is in accord with *Kawasho*.

PRA continues to look to *Kawasho*, but a good portion of Appellant's Opening Brief discusses why *Kawasho* was in error. *Opening Brief at 32, § (8)*. *Kawasho* relied upon a non-binding 1935 Arkansas federal case involving Arkansas state law regarding breach of an express contract. The court erroneously applied that expectation damages standard to a California quasi-contractual claim, allowing compound interest as damages in a claim for assumpsit. The *Kawasho* court should have followed the binding 1934 California Supreme Court case, *Philpott v. City of Los Angeles,* 1 Cal 2d 512, 520 (1934), and committed clear error by failing to do so. The District Court in this matter compounded this error in *Kawasho* by applying this standard not only to compound interest, but to contractual late fees as well. This is a paragon of how a small mistake can snowball into a larger mistake.

PRA does not refute that *Kawasho* was in error, and does not address that its entire argument is based upon the erroneous application of an Arkansas breach of contract damage standard to California quasi-contract claims. Instead, PRA discusses additional cases that PRA claims support its position that compound interest and contractual fees are recoverable in assumpsit - but they do not. Every one of the cases cited by PRA actually stands for the opposite proposition: that only simple interest is recoverable in assumpsit, and not compound interest.

### (1) *Salter v. Marsh does not support Kawasho.*

*Salter v Marsh* involved a series of agreements. *Salter v. Marsh*, 94 Cal. App. 124 (Cal. App. 1928). The creditor originally filed suit for $90,000.00. The parties then entered a settlement agreement wherein the debtor paid $40,000 immediately, and then agreed to make four payments for $10,000.00; another $10,000.00; $15,000.00; and $7,612.50. These four payments comprised the

principal due.  The parties also agreed to interest of $748.30, which was not part of the principal. The parties then signed an additional "escrow agreement," in which the creditor accidentally left out one of the above agreed payments of $10,000.00. The debtor paid the interest payment, and three of the payments of principal, but refused to pay $10,000.00, because this payment was left out of the escrow agreement.   The court found this $10,000.00 principal payment could form the basis for assumpsit.  *Id* at 139-140.

PRA claims that this outcome shows that it is permissible in an assumpsit claim to add interest to principal, or to compound the interest.  *Answering Brief at 39*.  But that is not what happened in *Salter*.   What the court allowed was for principal to form the basis for a claim of assumpsit only, and not the interest.  The interest was paid separately before the assumpsit claim was filed, and never formed part of the principal.  *Salter* demonstrates the opposite of what PRA hopes: interest under assumpsit claims is simple, not compound, and is not added to the principal amount, but is recovered separately.

### (2)     *In re Estate of Hubbell* does not support *Kawasho*.

PRA also looks to *In re Estate of Hubbell,* a case not involving a contract at all but instead dealing with a distribution under an estate. In *Hubbell* the court held that 7% simple interest was available.   *In re Estate of Hubbell*, 216 Cal. 574, 577-78 (Cal. 1932).  Here again, the court did not find that a principal amount was increased by the amount of interest due, and thus compound interest was available, as PRA claims is allowed under assumpsit.   Instead, the court merely allowed simple interest, which did not form part of the principal owed.   As there was no contract at issue, this was not a contractual right to compound interest, but rather, pre-judgment simple interest.   A creditor suing for assumpsit is allowed simple interest on any claim for damages certain under Cal. Civ. Code §3287 (currently at a rate of 10%.)   The allowance of statutory simple interest on a claim in no way

justifies what PRA claims is allowed: the addition of express contractual compound interest and fees to principal under a quasi-contractual theory like assumpsit. The outcome in *Hubbell* is consistent with other California authorities on assumpsit: simple statutory interest is allowed on the actual principal amount of a debt; compound interest is not.

The *Hubbell* decision also impacts *Kawasho*. Both cases involved a claim of statutory waiver under Civil Code §3290, as a principal amount was paid in full. In both cases the court rejected the application of § 3290. However, *Hubbell* did award simple interest in accordance with *State of California v. Day*, *Zumbrun*, *Philpott*, and *McBride*. The *Kawasho* court erroneously ignored these cases.

### (3) *Zumbrun v. University of Southern California* does not support *Kawasho.*

PRA posits that because *Zumbrun v. University of Southern California*, 25 Cal. App. 3d 1 (Cal. App. 2d Dist. 1972) contains the phrase "the defendant must be under a contract obligation with nothing remaining to be performed except the payment of a sum certain in money," this means that compound interest and express contractual fees are recoverable under a quasi-contractual claim for assumpsit. *Id.*, at 14. PRA ignores the subsequent sentence which states a remedy available is at most a "sum due as a rebate which was had and received for plaintiff's use…" *Id.*, at 15. A rebate is not compound interest and fees, it is the return of consideration, that is - "restitution." PRA also ignores the rest of the paragraph which states, "Likewise excluded are damages for a breach of an express contract." *Id.*, at 14–15. PRA offers no explanation as to why it would be allowed to recover compound interest and express contractual late fees for assumpsit, when under *Zumbrun* damages for breach of an express contract are excluded.

**(4)** ***Philpott v. City of Los Angeles* does not support *Kawasho*.**

PRA claims that because the *Philpott* court allowed the plaintiff to seek interest at all (PRA bold faces "plus interest"), this means that PRA can recover compound interest and contractual late fees in assumpsit. *Answering Brief at 44.* However, no one denies that simple pre-judgment interest, at the legal rate, is recoverable in assumpsit, just like it is recoverable in nearly every other civil claim for money; Cal. Civ. Code § 3287 is clear on this point. The issue is *compound interest*, and PRA's suggestion that *Philpott* allows it to recover contractual compound interest and late fees is unsupported. PRA does nothing to address the fact that in *Philpott*, the California Supreme Court held that in assumpsit, the plaintiff disaffirms the express contract at issue. *Philpott v. City of Los Angeles,* 1 Cal 2d 512, 520 (1934). This logically includes disaffirming a right to contractual compound interest and fees as well, instead electing to recover statutory simple interest at the legal rate.

PRA does not provide any case, other than the erroneous *Kawasho,* that supports PRA's position, and as demonstrated in O'Bryne's Opening Brief, *Kawasho* is fatally flawed as it ignores the California Supreme Court's 1934 opinion on assumpsit in *Philpott*. PRA also fails to address any of the Supreme Court and Ninth Circuit rulings on quasi-contract and restitution cited by O'Bryne in his Opening Brief, and has failed to demonstrate that the proper remedy for unjust enrichment is anything other than restitution.

Consequently, by falsely demanding contractual late fees and compound interest, PRA violated 15 U.S.C. § 1692f(1).

**B. Just as with account stated, here PRA's violations were material.**

Finally, PRA continues to claim that its violations are not material. Materiality has been discussed at length above, but with regard to contractual fees and interest using common counts, materiality is as strong as ever.

O'Bryne went to trial because he believed he was being sued for an amount not owed, and the court agreed. [E.R. 70-71]. Now PRA argues that "PRA sued O'Bryne for <u>less</u> than the amount it was entitled to recover." *Answering Brief, at p. 15-16.* Here PRA seems out of touch with reality. The state court found that PRA was entitled to recover *nothing*, just as O'Bryne said. PRA now asks this court to ignore the state judgment and pretend that PRA won the case, and rule accordingly.

PRA also argues that O'Bryne had only "two intelligent choices" after being sued - "file a response," or "do nothing." In reality, O'Bryne had many "intelligent" choices under the contract that PRA worked so hard at to deny him. He might have arbitrated [E.R. 154], except PRA falsely insisted there was no contract, by alleging an account stated. He might have retained an attorney, except PRA falsely insisted his attorney would not be paid under the contract, by alleging an account stated. [E.R. 153]. He might have changed venue to Virginia [E.R. 153], but again, PRA falsely insisted any contractual provisions were relinquished by alleging an account stated.

## III. Conclusion.

Most collection lawsuits end in default, and those that do not are usually defended by a *pro se* consumer with little knowledge of legal procedure. Consequently, the claims of collectors in their complaints are rarely challenged. This creates a tempting scenario for collectors, who can easily recover extra money by misrepresenting the character or legal status of a debt, and by demanding interest, fees, and charges that are unavailable to them. That is why congress passed 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692f(1), and that is why the California legislature passed California's Rosenthal Act - to protect consumers from these abusive and unfair tactics.

PRA argues that by relying on a mere credit card statement sent to the consumer, it can circumvent the contract entered into between the customer and the credit card provider. By fabricating an account stated, PRA hopes to deny consumers their contractual protections, such as the right to recover attorneys' fees when the consumer prevails in state court, as O'Bryne did here, the right to invoke arbitration, and the right to choose another venue.

In finding that these types of tactics violate the law, the court does more than simply protect consumers; it protects other debt collectors as well. When a debt collector makes the type of misrepresentations that PRA made here, it places other debt collectors, here PRA's competitors, in a difficult position. These competitors must then choose to use the same tactics PRA uses, in order to stay competitive, or they can abstain from such tactics and be competitively disadvantaged.

For the reasons stated, O'Bryne requests the court reverse the district court judgment and award judgment to O'Bryne for violations of the FDCPA and California's Rosenthal Act.

Dated: July 11, 2014

By: /s/ Robert L. Hyde
Robert L. Hyde
**HYDE & SWIGART**
2221 Camino Del Rio South,
Suite 101
San Diego, CA 92108-3609
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, undersigned counsel declares that there are no known related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

I certify pursuant to Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit Rule 32-1 that the attached Brief of Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(5)and (6) as it is proportionately spaced, has a typeface of 14 points, and contains 6,891 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: July 11, 2014

By: /s/ Robert L. Hyde

Robert L. Hyde
**HYDE & SWIGART**
2221 Camino Del Rio South,
Suite 101
San Diego, CA 92108-3609
Telephone:     (619) 233-7770
Facsimile:     (619) 297-1022

| 9th Circuit Case Number(s) | 13-55563 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

| Jul 11, 2014 |
|---|

.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/Eva Dickey |
|---|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

| |
|---|

.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| |
|---|
| |

Signature (use "s/" format) | |
|---|---|